**No. 19-2048**

# In the United States Court of Appeals for the Fourth Circuit

NORTH CAROLINA STATE CONFERENCE OF THE NAACP, CHAPEL HILL-CARBORO NAACP, GREENSBORO NAACP, HIGH POINT NAACP, MOORE COUNTY NAACP, STOKES COUNTY BRANCH OF THE NAACP, WINSTON SALEM-FORSYTH COUNTY NAACP,
*Plaintiffs-Appellees*,

*v.*

PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives,
*Appellants*,

&

DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections; STELLA E. ANDERSON, in her official capacity as Secretary of the North Carolina State Board of Elections; DAVID C. BLACK, KEN RAYMOND, and JEFFERSON CARMON III, in their official capacities as members of the North Carolina State Board of Elections,
*Defendants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**MOTION TO DISMISS INTERLOCUTORY APPEAL**

(counsel listed on following page)

Irving Joyner
NORTH CAROLINA CENTRAL
UNIVERSITY SCHOOL OF LAW
P.O. Box 374
Cary, NC 27512
(919) 319-8353
ijoyner@nccu.edu

Penda D. Hair
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
(202) 256-1976
phair@forwardjustice.org

Caitlin A. Swain
FORWARD JUSTICE
400 W. Main St., Suite 203
Durham, NC 27701
(919) 323-3889
cswain@forwardjustice.org

John C. Ulin
ARNOLD & PORTER
KAYE SCHOLER LLP
777 S. Figueroa St., 44th Floor
Los Angeles, CA 90017-5844
(213) 243-4228
john.ulin@arnoldporter.com

James W. Cooper
Jeremy C. Karpatkin
Andrew T. Tutt
Stephen K. Wirth
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

*Counsel for Plaintiffs-Appellees North Carolina State Conference of the NAACP, Chapel Hill-Carboro NAACP, Greensboro NAACP, High Point NAACP, Moore County NAACP, Stokes County Branch of the NAACP, Winston Salem-Forsyth County NAACP*

## INTRODUCTION

Appellants are champing at the bit to appeal the denial of their renewed motion to intervene in this case. But their appeal is either too late or too early. Appellants forfeited their chance to appeal their first intervention motion when they waited too long to appeal the district court's decision and then tried to circumvent the error by refiling almost the same motion again. But courts have consistently held that a party cannot cure a failure to timely appeal a denial of a motion to intervene by "renewing" the motion. Consequently, Appellants' appeal is untimely.

If it is not time-barred, then Appellants' appeal is premature. The district court has not denied Appellants' renewed motion to intervene. In the absence of an order denying Appellants' motion, there is nothing that Appellants can appeal and nothing over which this Court can exercise jurisdiction. Thus, even if Appellants' can appeal their untimely "renewed" motion to intervene, they need to wait until the district court *actually denies it*.

Finally, Appellants lack Article III standing to appeal. Proposed Intervenors do not have standing to intervene in this case at all because they lack a cognizable Article III injury. The Supreme Court has *never* held that a

state legislature has Article III standing in a case where the executive branch of the same State is already in the case defending the State's law. A state legislature cannot manufacture Article III standing by passing a law purporting to authorize itself to represent the State in federal court.

The Court should dismiss this appeal and deny as moot Appellants' pending motions to stay district-court proceedings, ECF No. 11, and to expedite appellate proceedings, ECF No. 12. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes." (citation omitted)).

## PROCEDURAL BACKGROUND

The district court has not yet ruled on the intervention motion at issue in this appeal. On June 3, 2019, the district court denied Appellants' first motion to intervene, D. Ct. Dkt. 56, and the 30-day period for Appellants to notice an appeal from that order expired. Six weeks later, Appellants moved to intervene again on virtually identical grounds, D. Ct. Dkt. 60, and briefing on their "renewed" motion concluded on August 18. On September 17, Appellants informed the district court that they would appeal the court's failure to decide the motion if the court did not rule on their renewed motion

by September 24. D. Ct. Dkt. 71. On September 26, Appellants noticed this appeal.

**ARGUMENT**

1. If Appellants wanted to pursue the question of intervention in this Court, they should have appealed from the district court's appealable final order denying their original intervention motion, not the district court's non-denial of their renewed motion. *See Plain v. Murphy Family Farms*, 296 F.3d 975, 981 (10th Cir. 2002) ("If the district court denies [a] motion [to intervene], the proper procedure is to pursue an immediate appeal, and not to file repetitive motions pestering the district court."). Appellants had ample time to appeal the district court's order denying their first motion, but they sat on their hands. Instead, they filed a "renewed" motion to intervene just as the time for Plaintiffs' preliminary injunction, which Appellants knew was forthcoming,[1] approached.

[1] Appellants always expected Plaintiffs to seek a preliminary injunction against implementation of SB 824. In January 2019, Appellants declined to consent to a motion to extend the time for Governor Cooper and Plaintiffs to respond to their intervention motion "because Plaintiffs would not agree to wait until after the intervention motion is resolved to file for any temporary or preliminary injunctive relief or take other action on the merits." D. Ct. Dkt. 24, at 3. At the time of the joint motion for extension of time, the voter ID provisions of SB 824 were scheduled to go into effect in 2019. Thus,

That tactical choice—one calibrated to disrupt district court proceedings—also had the effect of foreclosing this appeal. "[A]n appeal from the denial of intervention cannot be kept in reserve" by simply renewing the motion; "it must be taken within thirty days of the entry of the order, or not at all." *Hutchinson v. Pfeil*, 211 F.3d 515, 518 (10th Cir. 2000). The Court should reject Appellants' "improper attempt, by filing a virtually identical intervention motion, to circumvent [their] failure to appeal the first motion's denial within the required time." *B.H. By Pierce v. Murphy*, 984 F.2d 196, 199 (7th Cir. 1993). Appellants' decision not to appeal the district court's denial of their first motion divests this Court of appellate jurisdiction over this appeal. *See Plain*, 296 F.3d at 981; *Hutchinson*, 211 F.3d at 518; *B.H. By Pierce*, 984 F.2d at 199.

---

Appellants anticipated that Plaintiffs would seek injunctive relief earlier in the year to prevent implementation in the November 2019 municipal elections. In March 2019, the General Assembly changed the implementation date, so that voter ID would first be in effect for the March 2020 primaries. Thus, Appellants reasonably anticipated—as they had in January—that Plaintiffs would likely seek an injunction to prevent the law's implementation during the March 2020 primary. Appellants also were served with Plaintiffs' Motion for Scheduling Conference and Order, filed April 30, 2019, which set out August 30, 2019 as the anticipated date for plaintiffs' motion for preliminary injunction. D. Ct. Dkt. 54, at 2, which was actually filed on September 17.

2. Even if this appeal were not too late, it would be too early. Proposed intervenors can immediately appeal only the complete denial of a motion to intervene. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987). But here, the district court has not ruled on Appellants' renewed motion to intervene. In other words, there is no appealable final order over which this Court can exercise appellate jurisdiction, *see* 28 U.S.C. § 1291, because there is no order whatsoever.[2]

Appellants attempt to paper over the lack of an appealable final order by arguing that the district court has somehow denied their renewed motion *de facto*, when the motion has only been fully briefed for just over one month. But the mere fact that the district court has not abided by Appellants' preferred schedule does not amount to a *de facto* denial—especially not

[2] Nor can this Court exercise appellate jurisdiction under the collateral-order doctrine. The district court's failure to decide Appellants' motion does not (1) have the "practical effect" of denying injunctive relief, (2) result in a "serious, perhaps irreparable, consequence," or (3) require "immediate appeal" to be "effectively challenged." *Carson v. American Brands Inc.*, 450 U.S. 79, 84 (1981). Again, more fundamentally, there is no *collateral* order to appeal from because there is no order whatsoever.

where the North Carolina Attorney General is continuing to defend this lawsuit, as the district court found. D. Ct. Dkt. 56, at 8, 10.[3]

3. Article III limits the exercise of the judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Town of Chester v. Laroe Estates*, 137 S. Ct. 1645, 1650 (2017) (citation omitted). To appeal a denial of a motion to intervene in a federal lawsuit, a party must have Article III standing. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*,

---

[3] The cases Appellants cite illustrate this point. *See* ECF No. 10, Add. at 1. In *Americans United for Separation of Church & State v. City of Grand Rapids*, a Jewish religious organization moved to intervene after the City of Grand Rapids declined to appeal an order enjoining the placement of a menorah on city property. 922 F.2d 303, 306 (6th Cir. 1990). The Sixth Circuit permitted the organization to appeal before the district court had ruled on its intervention motion because the district court had set a hearing on the motion for *after* Hanukah, effectively mooting the case. *Id.* Likewise, in *District of Columbia v. Trump*, this Court permitted the President to immediately appeal a *de facto* denial of absolute immunity because the district court had ordered discovery to begin without ruling on the President's motion to dismiss, "thereby effectively denying the President the important aspect of immunity that he be spared the burdens of pretrial proceedings, including discovery." 930 F.3d 209, 213 (4th Cir. 2019). In contrast to these cases, Appellants here have no interest that might be prejudiced by the district court's failure to rule within the schedule Appellants have imposed. And even if they had such an interest, that interest is being protected by the North Carolina Attorney General, who is defending this litigation.

137 S. Ct. 1645, 1651 (2017). To establish Article III standing, a party invoking the jurisdiction of a federal court must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *See id.* at 1650.

The proposed intervenors lack an injury in fact. The invalidation of a state law as unconstitutional does not inflict "a discrete, cognizable injury" on a State legislative body. *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019). And a State statute cannot confer Article III standing on a State legislature; rather, a State legislature can represent a State's interests in federal court only where the legislature otherwise has a concrete and particularized Article III injury of its own. *See Hollingsworth v. Perry*, 570 U.S. 693, 710-14 (2013); *accord Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (a party does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a … a statutory right and purports to authorize that person … to vindicate that right."). Proposed intervenors' generalized interest in the constitutionality of North Carolina's laws, "undifferentiated and common to all members of the public," does not give rise to an Article III injury. *United States v. Richardson*, 418 U.S. 166, 176-77 (1974). The Supreme Court has never held that a State legislature had an

Article III injury in a case where a State's Executive Branch was already defending the constitutionality of a State statute.

## CONCLUSION

The Court should dismiss the appeal and deny all other pending motions as moot.

September 27, 2019

Respectfully submitted,

s/ *Stephen K. Wirth*
John C. Ulin
ARNOLD & PORTER
KAYE SCHOLER LLP
777 S. Figueroa St., 44th Floor Los Angeles, CA 90017
(213) 243-4000
john.ulin@arnoldporter.com

James W. Cooper
Jeremy C. Karpatkin
Andrew T. Tutt
Stephen K. Wirth
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
james.w.cooper@arnoldporter.com

Irving Joyner
NORTH CAROLINA CENTRAL
UNIVERSITY SCHOOL OF LAW
P.O. Box 374
Cary, NC 27512
(919) 319-8353
ijoyner@nccu.edu

Penda D. Hair
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
(202) 256-1976
phair@forwardjustice.org

Caitlin A. Swain
FORWARD JUSTICE
400 W. Main St., Suite 203
Durham, NC 27701
(919) 323-3889
cswain@forwardjustice.org

*Counsel for Plaintiffs-Appellees North Carolina State Conference of the NAACP, Chapel Hill-Carboro NAACP, Greensboro NAACP, High Point NAACP, Moore County NAACP, Stokes County Branch of the NAACP, Winston Salem-Forsyth County NAACP*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs-Appellees' Motion to Dismiss Interlocutory Appeal was filed electronically on September 27, 2019 and will, therefore, be served electronically upon all counsel.

s/ *Stephen K. Wirth*
Stephen K. Wirth

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29(a)(4) and 32(g), the undersigned counsel for appellee certifies that this brief:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this brief contains 1,736 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) because this brief has been prepared using Microsoft Office Word and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

s/ *Stephen K. Wirth*
Stephen K. Wirth